**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Franklin R. Roark, Jr., | : | Case No. 1:04CV0547 |
| Plaintiff | : | |
| | : | Magistrate Judge David S. Perelman |
| v. | : | |
| | : | |
| Phil R. Stammitti, et al., | : | **MEMORANDUM OPINION** |
| | : | |
| Defendants | : | |

Currently pending is the motion of defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

Plaintiff, Mr. Franklin R. Roark, Jr,. initiated this action under 42 U.S.C. §1983 against Mr. Phil R. Stammitti, Sheriff of Lorain County, Ohio, and Ms. Margaret Boise, Registered Nurse for the Lorain County Sheriff's Department, alleging that their deliberate indifference to his dental needs denied him his Eighth Amendment right to be free of cruel and unusual punishment.

The Lorain County Correctional Facility ("LCCF") is a county jail operated by the Lorain County Sheriff's Department. Plaintiff was incarcerated in that facility between August of 2003 and May of 2004 upon his indictment for rape.

On November 9, 2003 plaintiff filed an Inmate Grievance Form with prison authorities stating that his dentures were broken and in need of repair and that he had been on a list for 30 days awaiting a dental visit. The reply to plaintiff indicated that the dentist prioritized the inmates on the list in terms of need and that it was anticipated that he would be seen soon. That occurred several

days later, on November 12, 2003, when he was examined by Dr. Christy DiRenzo, a dentist who performed a limited oral exam and explained to plaintiff that LCCF provided a "basic needs dental facility" which did not have the capability to repair his dentures.

As a result of continued complaints about his dentures, plaintiff was examined on March 3, 2004 by another dentist, Dr. Karen Kramer, who summarized her visit with plaintiff in a letter directed to Nurse Boise dated June 2, 2004:[1]

> Mr. Roark was seen in our office on March 3, 2004. Patient had several complaints about the maxillary arch. Tooth #8 was interfering with chewing, the tooth was adjusted to prevent interference. The patient stated that he wanted a new partial. The Patient at the time had a well worn all acrylic partial with five remaining teeth. Mr. Roark was functioning adequately with the partial that he had.

Again in response to plaintiff's complaints regarding his dentures, in late April of 2004 it was decided that his food intake would be recorded in order to determine whether he was suffering eating problems relating to his dentures. Those logs were summarized by plaintiff as follows:

| DATE | BREAKFAST | LUNCH | DINNER |
| --- | --- | --- | --- |
| 04-27-04 | -- | -- | 100% |
| 04-28-04 | 100% | 75% | 25% |
| 04-29-04 | 25% | 25% | 25% |
| 04-30-04 | 100% | 50% | 50% |
| 05-01-04 | 75% | 75% | 100% |
| 05-02-04 | 50% | 25% | 75% |
| 05-03-04 | 25% | 25% | 75% |

By plaintiff's own admission, "it is impossible to even hazard a guess whether the consistency of

---

[1] Plaintiff's assertion that the letter was written "more than one year after [Dr. Kramer] saw Mr. Roark," is clearly mistaken as the letter was written approximately three months after the office visit. By the time this letter was written, plaintiff had been transferred from LCCF to the Eastern Kentucky Correctional Complex in West Liberty, Kentucky, where he is serving life sentences.

the meal effected Mr. Roark's ability to consume it."[2]  The parties dispute whether plaintiff lost weight during his confinement at LCCF.

In a telephonic pretrial conducted in this case by Judge Solomon Oliver, plaintiff admitted that as of January 14, 2005 Kentucky prison officials had also refused to replace his dentures. According to the affidavit testimony of Nurse Boise, as of March of 2005 there was still no indication that the dentures had been replaced.

Plaintiff filed the instant case on March 19, 2004.

In their motion for summary judgment, defendants argue that there were no genuine issues of material fact pertaining to: (1) whether Sheriff Stammitti and Nurse Boise were deliberately indifferent to plaintiff's complaints regarding his dentures; (2) whether liability in this case is precluded by the doctrine of qualified immunity; and (3) whether Eleventh Amendment immunity precludes a cause of action against Sheriff Stammitti as a state actor.

The disposition of a motion for summary judgment is governed by Rule 56(c) of the Federal Rules of Civil Procedure, which provides for the granting of such motion only where, "[T]he pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to  judgment as a matter of law."  It is the court's function under such a motion to determine whether a genuine issue of material fact exists, as opposed to endeavoring to resolve any such factual issues.  Tee-Pak, Inc. v. St. Regis Paper Co., 491 F.2d 1193 (6th Cir. 1974); 6 Moore's Federal Practice 56.15 [1.-0].  It is the initial burden of the moving party to demonstrate the absence of a genuine issue of material fact as to an essential element of the claims brought by the non-

---

[2]That having been said, plaintiff relies on the logs as evidence that his food intake was affected by his dental problems. That reliance is misplaced, however, as there is no feedback on the logs as to the reason the food was not eaten.

moving party. Curto v. Harper Woods, 954 F.2d 1237, 1241 (6th Cir. 1992); Wilson v. Zanesville, 954 F.2d 349, 350-351 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989).

In Street v. J.C. Bradford & Co., supra, the Sixth Circuit Court of Appeals reviewed three then recent decisions of the United States Supreme Court addressing summary judgment practice, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).[3] The court summarized those cases as standing for a number of new principles in summary judgment practice, including the fact that cases involving considerations of state of mind issues (such as discriminatory action) are not automatically inappropriate for summary judgment; that a federal directed verdict standard ("whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law") should be applied to summary judgment motions; that a non-moving party must provide "more than a mere scintilla of evidence" to avoid summary judgment; that the substantive law applicable to the cause of action will govern the materiality of the issues of fact; that the court has no duty to search the record to determine the existence of genuine issues of material fact; and perhaps most significant, that a trial court has more discretion than it would have in the past in weighing the evidence offered by the non-moving party, considered in light of the whole record, to determine whether that party's evidence does "more than simply show that there is some metaphysical doubt as to the material facts" or whether it demonstrates that the non-moving party's claims are

---

[3] After the passage of a number of years the court's reference to those rulings as representing a "new era" of "dramatic change" may no longer hold true, but the characterization of their import as to motions for summary judgment being viewed with "more favorable regard" certainly remains true.

4

"implausible". Id. at 1479-1480 (Footnotes and citations omitted.)

> Title 42 U.S.C. § 1983 provides for civil liability against one:
>
>> . . . who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution. . . ..

The first step in addressing an action under § 1983 is to determine whether the plaintiff has been deprived of any right secured by the United States Constitution. Baker v. McCollan, 443 U.S. 137 (1979). In addition to determining whether the conduct alleged deprived plaintiff of a constitutional right, the conduct must have been committed by a person acting under color of state law. Banchy v. Republican Party of Hamilton County, 898 F.2d 1192 (6th Cir. 1990).

Plaintiff argues that he has been deprived by prison authorities of his constitutional right to adequate dental care.

That right is guaranteed to him as a prisoner by the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution, made applicable to state prisoners by way of the Due Process Clause of the Fourteenth Amendment. See Estelle v. Gamble, 429 U.S. 97, 101-102, 104-105 (1976). Corrections personnel violate the prohibition against cruel and unusual punishment if they are deliberately indifferent to a prisoner's serious medical needs. Id. at 104; Comstock v. McCrary, 273 F.3d 693, 702 (6th Cir. 2001), cert. denied, 537 U.S. 817 (2002).

While the constitution does not require that a prison be "comfortable," neither does it permit inhumane treatment. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Helling v. McKinney, 509 U.S. 25 (1993)). Prison officials are not permitted to use excessive force upon prisoners and must provide them with humane conditions of confinement including adequate food, clothing, shelter

5

and medical care.  Ibid, citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984).

In cases brought by prisoners calling into question the adequacy of their medical care, there is a two-prong test to determine whether the alleged deprivation has amounted to a constitutional violation; first, an objective test is applied to determine whether the deprivation is "sufficiently serious;" and second, a subjective test is applied to analyze whether the deprivation was committed by a prison official with a "sufficiently culpable state of mind."  Id. at 834.  Accord, Comstock v. McCrary, supra at 702-703; Brown v. Bargery, 207 F.3d 863, 867 (6th Cir. 2000).  The Sixth Circuit Court of Appeals has held that "where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law."  Davis v. Powell, 110 Fed.Appx. 660, 662 (6th Cir. September 17, 2004), citing Graham ex rel. Estate of Graham v. County of Washtenaw, 358 F.3d 377, 385 (6th Cir. 2004) (quoting Westlake v. Lucas, 537 F.2d 857, 860, n.5 (6th Cir. 1976)).

In order to show that a prisoner's medical need is "sufficiently serious," facts must be alleged to show either that a physician has diagnosed the medical need as warranting treatment or that the need for medical attention would be obvious to a lay person.  Blackmore v. Kalamazoo County, 390 F.3d 890, 2004 WL 2792016, *5-7 (6th Cir. 2004).  Plaintiff must also show that "he is 'incarcerated under conditions posing a substantial risk of serious harm.'"  Davis v. Powell, supra at 662, quoting Brown v. Bargery, supra at 867.  Clearly, when a plaintiff's medical need involves "minor maladies or non-obvious complaints of a serious need for medical care," the plaintiff must provide evidence of "verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment."  Johnson v. Karnes, 398 F.3d 868, 2005 U.S.App. LEXIS 3287, *13-14 (6th Cir.

6

February 25, 2005), citing Blackmore, supra at *6 and Napier v. Madison County, Kentucky, 238 F.3d 739, 742 (6th Cir. 2001).

In the present case, the plaintiff argues that the affidavit testimony of Mr. Josh Schneider, his cell-mate while he was incarcerated at LCCF, creates a genuine issue of material fact as to any issues pertaining to the deliberate indifference of prison officials to his dental problems.  However, the testimony of a fellow inmate without any apparent medical training clearly cannot constitute the type of verifying medical evidence of a serious medical need that is required to make a showing that those needs were sufficiently serious to warrant care.

To the contrary, the medical notes of two treating dentists establish the absence of a genuine issue of material fact as to whether plaintiff was entitled to new dentures.  Dr. Kramer wrote that although there was a problem with one of his teeth interfering with chewing, the tooth was adjusted to prevent such interference, but she determined that his request for a new partial denture should be denied as he was able to "function adequately" with the partial denture he was wearing.  Absent medical evidence to dispute the determinations of the dentists in this case, this Court will not second-guess them regarding the adequacy of their treatment.  See Davis v. Powell, supra at 662.

Based on the failure to establish a genuine issue of material fact as to this objective prong of petitioner's claim calling into question the adequacy of his dental care, summary judgment is warranted without further analysis.  However, even if the subjective prong was to be considered, the same conclusion would follow.

In order to establish the subjective prong of the Eighth Amendment analysis, plaintiffs must show that the prison officials acted with "deliberate indifference" to "an excessive risk to inmate health or safety," by way of evidence that a prison official was "aware of the facts from which the

inference could be drawn that a substantial risk of serious harm exists," and that the official did, in fact, "draw the inference."  Farmer v. Brennan, supra at 834, 837.  Stated differently, plaintiff is required to prove that prison officials "subjectively perceived a risk of harm and then disregarded it[,]" a requirement which is "meant to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the misdiagnosis of an ailment."  Comstock v. McCrary, supra at 703.  Careless or negligent treatment provided to an inmate does not evidence deliberate indifference, but rather incompetence, evidence of which does not satisfy the subjective prong of the adequate medical care test.  Ibid.  "Deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk."  Ibid, quoting Farmer v. Brennan, supra at 836.

In the present case the evidence of record establishes that prison officials responded to plaintiff's complaints that his dentures needed to be replaced by having him examined by dentists on two occasions.  On the second occasion, one tooth on the partial denture was adjusted in order to prevent interference with chewing, and it was determined that plaintiff could "function adequately" with the partial denture as modified.  In reliance upon those reports, the prison officials refused to replace plaintiff's dentures.  Having reviewed all the evidence submitted , this Court cannot find that any prison officials acted with deliberate indifference to plaintiff's serious medical needs.

This Court is of the opinion that there is nothing in the foregoing evidence, even that submitted by plaintiff, to suggest anything approaching the deliberate indifference required in order for his medical treatment to have amounted to a constitutional violation.  Consequently, there is no genuine issue of material fact as to plaintiff's claims for relief and defendants will be granted

summary judgment.[4]

                                                        s/DAVID S. PERELMAN
                                                        United States Magistrate Judge

DATE:    November 9, 2005

---

[4] Having so found, it is unnecessary to address the remaining issues raised by defendants.